No. 18,945.

BENEDICTO DYONISIO *v.* ROBERT H. MCWILLIAMS, JUDGE, ET AL.

(338 P. [2d] 684)

Decided April 27, 1959.   Rehearing denied May 18, 1959.

Messrs. ALLEN, LYNCH & ROUSE, for complainant.

Messrs. TIPPIT, HASKELL & WELBORN, for defendants Robert H. McWilliams and Transit Equipment Company.

Messrs. LEWIS, GRANT & DAVIS, Mr. WILLIAM P. WAGGENER, for defendant Denver United States National Bank.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THIS is an original proceeding in prohibition. Benedicto Dyonisio filed his complaint in this court in which he prayed for the issuance of a rule directed to the Honorable Robert H. McWilliams, Judge of the District Court of the City and County of Denver, the Transit Equipment Company, and others, requiring them to show cause why they should not be prohibited from proceeding further against him in the adjudication of an action pending before said judge. Upon consideration of the said complaint, and the brief filed in support thereof, this court issued the rule as prayed for. Defendants have made return by an answer and motion to dismiss, and have filed a brief in support of their respective positions.

The pertinent facts are as follows: The Transit Equipment Company, a foreign corporation, filed its complaint in civil action No. B-23,896 in the district court of the City and County of Denver. It alleged that a municipal transportation company of Sao Paulo, Brazil, desired to purchase seventy-five used trolley buses; that Dyonisio and Transit Company entered into a verbal agreement to acquire such buses and sell them to the transportation company and to divide the profits; that Transit Company was to pay for reconditioning the buses to be sold and that Dyonisio entered into negotiations with

one Petteys and a company to whom we refer as Motores (both named as defendants) for the purchase of seventy-five used trolley buses formerly used by the Denver Tramway Company.

It is further alleged in the complaint that the negotiations last mentioned resulted in a verbal agreement between Transit Company, Dyonisio and Petteys acting for themselves and the companies they represented as follows: Petteys, Dyonisio and Transit Company would submit a formal offer to the Brazil corporation to supply the buses and accessories thereto; Petteys would furnish the buses, and Transit Company would supply the funds to recondition them. The proceeds received from the sale would be used for repaying all costs including the moneys expended by Petteys to acquire the buses, and a profit to him. All moneys remaining after these expenditures were to be divided equally between Dyonisio and Transit Company. It is further alleged that the parties agreed to reduce the oral contract to writing but that the drafts prepared by attorneys for Transit Company, Petteys, and Dyonisio were not acceptable and the agreement to reduce the oral contract to writing was never fulfilled. Thereafter Transit Company and Dyonisio entered into a written statement of their joint undertaking and Transit Company advanced money to Dyonisio in reliance thereon. It is further alleged in the complaint that due to the failure of all participants to execute the aforementioned written contract, Dyonisio and Petteys declared that Transit Company had no further interest in the transaction and said company was thus prevented from performance of its part of the agreement. It is further alleged that Dyonisio and Petteys completed the sale of the buses to the transportation company in Brazil, and that Dyonisio assigned his interest in the sales transaction to the Denver National Bank which created a custody account and escrow account for the purpose of receiving moneys payable as the purchase price of said buses. It is further alleged

that moneys have been received in said accounts and expenditures have been made therefrom, and that funds are presently in the possession of the bank received by it on account of said transaction; that Transit Company has an interest in the assets on hand, previously paid, and to be paid in the future. It is further alleged that a fiduciary relationship exists between all the parties, except the bank, and that these defendants violated the fiduciary relationship; that Transit Company acquired an equitable interest in the trolley buses, which was wrongfully disposed of by the defendants, and that defendants received the contract rights, moneys, and accounts receivable by reason of the wrongful conversion of the interest of the Transit Company.

The prayer of said complaint sought a decree subjecting the funds presently in the bank, or to be received in the future by the bank, to a constructive trust in favor of plaintiff to the extent of its interest therein, and to subject all assets in the bank's hands to an equitable lien in favor of plaintiff to the extent of amounts owed it under the aforementioned agreements. April 21, 1958, Transit Company applied for and obtained a temporary restraining order, the effect of which was to impound funds in the possession of the bank. Following service of process on Dyonisio by publication a temporary injunction issued in the action. June 30, 1958, Dyonisio appeared specially and moved to quash the service of summons. This motion was overruled on October 1, 1958. Thereafter, and without further appearance in the trial court, Dyonisio instituted this original proceeding.

The Denver National Bank filed an answer in this court in which it, "Admits the truth of all allegations with respect to it set forth in the Complaint herein and alleges that it has only a passive interest in the outcome of this proceeding and will abide by any lawful rule or order of this Court with respect to the disposition of all monies presently held by it or to be paid to it in the

future under the terms of the escrow agreement described in the Complaint."

As grounds for making the rule absolute it is argued by counsel for Dyonisio:

"1. Personal service of process upon a non-resident defendant is a condition precedent to jurisdiction to render an in personam judgment.

"2. Control by the court over property of the defendant which is physically present in the state is a condition precedent to jurisdiction to render an in rem or quasi in rem judgment.

\* \* \*

"3. The principle that in personam jurisdiction cannot be obtained over a non-resident cannot be evaded by seeking, under the guise of in rem jurisdiction, a judgment which is necessarily in personam in its nature and effect.

"4. That the issuance of a temporary restraining order and temporary injunction was void for lack of jurisdiction and constitutes an abuse of discretion contrary to the rules of civil procedure."

The argument by counsel who seek discharge of the rule is presented under the following points:

1. The only issue proper for consideration in this original proceeding is whether the trial court exceeded its jurisdiction in overruling the motion of Dyonisio to quash the service of process.

2. A res exists in Colorado on which in rem jurisdiction may be based.

3. The object of the district court action is to establish an interest in the res.

4. It is improper in an action in the nature of prohibition to challenge the sufficiency or adequacy of the complaint in the lower court; to plead matters not before the trial court; or to challenge the validity of a temporary restraining order superseded by a preliminary injunction.

█ That there is a res within the state of Colorado

upon which the jurisdiction of the district court may be grounded, is clear from the facts as related above, and we so hold. The answer of the defendant bank disclaims any interest in the funds which it holds. The Transit Company claims an interest in this fund and seeks to impress a constructive trust upon it.

The situation thus presented is comparable to the facts present in the case of *Hoff, et al. v. Armbruster, et al.*, 125 Colo. 324, 244 P. (2d) 1069. From our opinion in that case we quote the following:

"It unquestionably is true that in actions in rem, or quasi in rem, the court must acquire jurisdiction over the property within its territorial limits. In actions quasi in rem the usual procedure is to acquire this jurisdiction by seizure through attachment or other formal writ issued by the court, the jurisdiction of which is involved. However in proceedings strictly in rem, as in the instant case, actual seizure of the property by formal writ is not necessary for jurisdictional purposes if control over the property can be acquired by other methods which are of 'equivalent import and which stand for and represent the dominion of the court over the thing, and, in effect, subject it to the control of the court.' 72 C.J.S. 1077 §59."

\* \* \*

"From the foregoing it is clear that by naming the person who had possession of all the property, as a defendant in the suit, and in seeking relief by injunction to restrain disposition of that property except as directed by the court, the court acquired control over the subject matter of the action.

"No judgment in personam was sought by plaintiffs against any nonresident defendant. Essentially, the object of the action was to reach and dispose of the individual interest of each nonresident defendant in specific property located in Colorado, by enforcing what was alleged to be a valid contract respecting that identical property. The service of summons by publication

314

was proper and the trial court erred in holding otherwise."

The foregoing is applicable to the instant case. See also *Aero Spray, Inc. v. Ace Flying Service, Inc.,* 139 Colo. 249, 338 P. (2d) 275, announced April 13, 1959.

The rule is discharged.

MR. JUSTICE SUTTON and MR. JUSTICE DOYLE not participating.